IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**GEORGIO RODRIQUEZ SCOTT**                                                              **PLAINTIFF**

v.                                                                                       CIVIL ACTION NO. 2:19-cv-123-TBM-MTP

**BILLY McGEE, ET AL.**                                                                  **DEFENDANTS**

## REPORT AND RECOMMENDATIONS

THIS MATTER is before the Court on the Motion for Summary Judgment [64] filed by Defendants Forrest County, Mississippi, William Burdette, and Justin Graham. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that that the Motion [64] be granted in part and denied in part as set forth herein.

## BACKGROUND

On August 26, 2019, Plaintiff Georgio Rodriquez Scott, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. Plaintiff's claims arise from his detention at the Forrest County Jail. In his complaint and as clarified by his testimony at the *Spears* hearing,[1] Plaintiff alleges that on July 7, 2019, he began arguing with an officer about the meal provided that day. The officer ordered Plaintiff to return to his cell, but Plaintiff refused because he wanted to complain to the sergeant. Thereafter, four officers attempted to return Plaintiff to his cell. One officer placed Plaintiff in a headlock, and three others restrained him. Plaintiff alleges that once he was restrained by these four offices, another officer—Defendant William Burdette—punched him in the face multiple times. Plaintiff alleges that this resulted in two black eyes and a scratch behind his ear.

---

[1] *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Flores v. Livingston*, 405 Fed. App'x 931, 932 (5th Cir. 2010); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the compliant).

1

Plaintiff also alleges that on July 18, 2019, Defendant Justin Graham verbally abused him by stating that he would grab Plaintiff's genitals and have sex with him. Plaintiff alleges that other inmates heard Graham's comment.

Additionally, Plaintiff asserts claims against Forrest County concerning his food. According to Plaintiff, he does not eat pork because he is Muslim and does not consume milk products because he is lactose intolerant. Plaintiff alleges that he was normally provided substitute food items to account for his dietary restrictions and that, on the occasions when he was provided pork or milk products, he would send the items back, and they would usually be replaced. Plaintiff, however, alleges that a single officer, Officer #44, refused to substitute pork or milk products. Officer #44 is not named as a defendant in this action. Instead, Plaintiff is asserting this claim against Defendant Forrest County.

Plaintiff also complains about certain conditions of his confinement. Plaintiff alleges that he was deprived of a sleeping mat for almost a week. Plaintiff asserts that he only had a blanket during that time and that he was uncomfortable. He also complains that he did not have running water in his cell for four days, which deprived him of readily available drinking water, resulted in urine and feces sitting in his toilet, and prohibited him from cleaning his cell. Plaintiff alleges that he could not take medication and was dehydrated and fatigued during these four days. Plaintiff alleges that he submitted grievances to Defendant Sheriff McGee complaining about the conditions at the jail and that his mother met with Sheriff McGee concerning these issues.

Plaintiff also alleges that he was denied an hour of recreation most days during his eleven-month incarceration at the jail. Plaintiff alleges that he was allowed time out of his cell for showers, but not for recreation on most days. Plaintiff does not allege he suffered any

specific damage as a result of a lack of out-of-cell recreation, but asserts generalized health concerns.

Finally, Plaintiff alleges that the law library at the jail had outdated materials and did not have the Mississippi Rules of Criminal Procedure. Plaintiff alleges that he dismissed his criminal defense counsel and did not know the proper format for the filings in his criminal case. Plaintiff, however, did not identify any particular detriment he suffered as a result of the allegedly deficient law library.

On July 1, 2021, Defendants filed their Motion for Summary Judgment [64], arguing that Plaintiff failed to exhaust his administrative remedies for his excessive force and verbal abuse claims, that the individual defendants are entitled to qualified immunity, and that Plaintiff cannot establish liability against Forrest County. Plaintiff did not file a response to the Motion [64].

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue

3

is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## ANALYSIS

### *Exhaustion*

In their Motion for Summary Judgment [64], Defendants argue that Defendants Burdette and Graham are entitled to summary judgment on Plaintiff's excessive force and verbal harassment claims due to Plaintiff's failure to exhaust administrative remedies.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983.  "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v.*

4

*Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  The United States Court of Appeals for the Fifth Circuit held that "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272.  Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Id*. at 266.

Defendants assert that the grievance policy at the jail required an inmate to provide an exact description of his complaint, along with the relief desired by the inmate.  According to Defendants, Plaintiff's grievances were insufficient to place jail officials on notice of Plaintiff's complaints related to his excessive force claim.  Additionally, Defendants assert Plaintiff's grievances concerning verbal harassment were defective because he failed to provide his desired relief.

Defendants did not submit a copy of the jail's grievance policy or an affidavit setting forth the procedure.  Instead, Defendants cite other cases in this Court indicating that the jail had an administrative remedies program in place during 2019.  However, except in extraordinary cases, courts will not look outside the record of a case before it to take notice of proceedings in another case not in evidence. *See Morse v. Lewis*, 54 F.2d 1027, 1029 (4th Cir. 1932); *Fabricant v. Miranda*, 2021 WL 3661136, at *4 (D. Ariz. July 1, 2021); *Home Design Servs., Inc. v. Stewart*, 2011 WL 796741, at *6 (N.D. Fla. Feb. 28, 2011); *Anthony v. Potter*, No. CV 106-146, 2008 WL 11404257, at *1 (S.D. Ga. July 1, 2008).  Defendants have not shown and the record does not establish that this is an extraordinary case justifying consideration of evidence submitted in another case as evidence in this case.  Thus, there are genuine issues of material fact as to whether a policy existed or was in force and how it operated.  Absent evidence clearly

showing that a policy existed and identifying what was required to exhaust the administrative process at the jail, the Court cannot conclude that summary judgment is warranted based on Plaintiff's alleged failure to exhaust.

### *Excessive Force*

Plaintiff alleges that Defendant Burdette used excessive force against him by punching him in the face after officers had restrained him. Defendants argue that Burdette is entitled to qualified immunity. The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Valdez*, 845 F.3d 580, 599-600 (5th Cir. 2016). A plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Id.* If the defendant did violate the plaintiff's constitutional rights, "the court then asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation and internal quotation marks omitted).

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees "from the use of excessive force that amounts to punishment." *Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989). To prevail on a claim of excessive force under the Fourteenth Amendment, a detainee must show that the force was "purposely or knowingly used against him" in a manner that was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015).

"[O]bjective reasonableness turns on the facts and circumstances of each particular case" *Id*. at 397. "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. A court must take into account policies and practices judged necessary by jail officials for the legitimate interests of preserving internal order, discipline, and institutional security. *Id*.

To determine whether a use of force was objectively reasonable, a court may consider the following: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id*.

In support of their Motion for Summary Judgment, Defendants submitted an Incident Report [64-2] prepared by Officer Dustin Gibson. According to Gibson's report the following events occurred. Officers Gibson, Alexander, and McCullum entered Plaintiff's pod to discuss his food and an argument ensued. The officers requested that Plaintiff return to his cell, but Plaintiff refused. The officers then attempted to escort Plaintiff to his cell, but he became combative. All available officers arrived, restrained Plaintiff, and moved him to an isolation cell. *See* [64-2] at 2.

Defendants argue that the force used against Plaintiff was to restore discipline after he refused to comply with orders. Plaintiff admitted that he did not comply with the officers' orders that he return to his cell. *See* [64-3] at 13. It is clear that disobeying orders poses a threat to the order and security of an institution. *See Minix v. Blevins*, 2007 WL 1217883, at *24 (E.D. Tex. April 23, 2007) (recognizing that even where a prisoner believes an order to be "unjustified and improper, this does not give him the right to disobey them at his whim"). Courts have

recognized that a pretrial detainee's refusal to comply with orders justifies the use of some degree of force. *See Gonzales v. Rowe*, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020). Thus, the record demonstrates that officers were permitted to use some degree of force in response to Plaintiff's refusal to comply with their orders for Plaintiff to return to his cell.

However, "an exercise of force that is reasonable one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle v. Bexar Cnty, Tex.*, 560 F.3d 404, 413 (5th Cir. 2009). The Fifth Circuit has "recognized that the force calculus changes substantially once . . . resistance ends." *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015). It is well-established that officers may not use gratuitous force against a prisoner or detainee who has already been subdued and is no longer resisting. *Cowart v. Erwin*, 837 F.3d 444, 454-55 (5th Cir. 2016) (finding that jail officer was not entitled to qualified immunity for punching a detainee in the face twice after the detainee had been subdued); *Kitchen v. Dallas Cnty, Tex.*, 759 F.3d 468, 479 (5th Cir. 2014) ("courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force.").

During the *Spears* hearing, Plaintiff testified[2] that four officers subdued him and that after he had "been under control, restrained, fully restrained" and no longer resisting, Burdette straddled him and repeatedly punched him in the face, which resulted in two black eyes. *See* [64-3] 12. Defendants argue that Burdette was not even present during the altercation. Defendants base this argument on Gibson's report, which does not mention Burdette. The report, however, does not conclusively establish that Burdette was not present during the altercation. It states that officers Gibson, Alexander, and McCullum entered Plaintiff's pod to discuss his food, but it also

---

[2] "[S]worn testimony at the *Spears* . . . hearing constitute[s] competent summary judgment evidence . . . ." *Falcon v. Holly*, 480 Fed. App'x 325, 326 (5th Cir. 2012).

8

states that once Plaintiff became combative, "all available officers arrived and assisted . . . ." *See* [64-2] at 2. This does not rule out Burdette's presence. Moreover, when confronting a qualified immunity inquiry at the summary judgment stage, courts "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). Plaintiff's sworn testimony creates a question of fact as to whether Burdette participated in the event in question.

Plaintiff's testimony also creates a genuine dispute regarding whether Burdette's actions were objectively unreasonable. Viewing the facts in the light most favorable to Plaintiff, he was restrained, no longer resisting, and surrounded by at least four officers when Burdette punched him in the face multiple times, causing two black eyes.[3] Plaintiff's testimony creates questions of fact as to whether Burdette used force against him and whether the force was "outside the context of an immediate and inseparable response" to Plaintiff's resistance. *See Curran*, 800 F.3d at 660. "A jury could find that no objectively reasonably officer would believe that [Plaintiff]—restrained, surrounded, and subdued—continued to pose an immediate threat of harm justifying the prolonged use of force." *Timpa v. Dillard*, ---F.4th---, 2021 WL 5915553, *5 (5th Cir. Dec. 15, 2021). Genuine disputes of material fact preclude summary judgment on Plaintiff excessive force claim against Burdette.

***Verbal Abuse***

Plaintiff alleges that Defendant Graham verbally abused him by stating that he would grab Plaintiff's genitals and have sex with him. However, "[m]ere allegations of verbal abuse do

---

[3] "Though an excessive force plaintiff need not show significant injury, the extent of injury may supply insight as to the force applied." *Cowart*, 837 F.3d at 453. Viewing the facts in the light most favorable to Plaintiff, a jury may tie Plaintiff's injuries to Burdette's punches and conclude that the injuries were indicative of excessive force.

not present actionable claims under § 1983." *Bender v. Berry*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *see also McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("mere threatening language and gestures" of a custodial officer do not, even if true, amount to constitutional violations). Accordingly, Plaintiff's verbal-abuse claim against Graham should be dismissed.

***Food***

Plaintiff alleges that he does not eat pork or consume milk products. Plaintiff alleges that he was normally provided substitute food items to account for his dietary restrictions and that, on the occasions when pork and milk products were provided, the items would usually be replaced. According to Plaintiff, however, one officer at the jail—Officer #44—refused to substitute the pork and milk products occasionally provided to Plaintiff.

The Constitution requires that detainees and inmates be provided "well-balanced meals, containing sufficient nutritional value to preserve health." *Green v. Ferrell*, 801 F.2d 765, 700 (5th Cir. 1986). Plaintiff's allegations only implicate Officer #44 in the alleged deprivation of food, but Plaintiff has not named Officer #44 as a defendant. Instead, Plaintiff is pursuing this claim against Forrest County.

Section 1983, however, does not allow a municipality to be held vicariously liable based on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Instead, Plaintiff must prove three elements to establish liability against a municipality under *Monell*: "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Covington v. City of Madisonville, TX*, 812 Fed. Appx. 219, 225 (5th Cir. 2020). Plaintiff has failed to demonstrate that any official policy or custom was the "moving force" behind an alleged deprivation of Plaintiff's constitutional rights arising from the conduct of Officer #44. *Monell*, 436 U.S. at 694; *Oliver v. Scott*, 276 F.3d 736,

742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  Thus, the undersigned recommends Plaintiff's claims against Forrest County relating the Plaintiff's food be dismissed.

***Conditions in Plaintiff's Cell***

Plaintiff alleges that he was deprived of a sleeping mat for almost a week and only had a blanket during that time.  He also complains that he did not have running water in his cell for four days, which deprived him of readily available drinking water, resulted in urine and feces sitting in his toilet, and prohibited him from cleaning his cell.  Plaintiff alleges that he was dehydrated and fatigued during these four days.

As a pretrial detainee, Plaintiff's constitutional right to adequate conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Pretrial detainees have a due process right not to be subjected to jail conditions that are imposed for the purpose of punishment. *Bell*, 441 U.S. at 535; *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).  For Section 1983 claims by pretrial detainees, the Fifth Circuit Court of Appeals has distinguished between claims regarding specific acts by officials and those regarding the general conditions of confinement. *See Hare*, 74 F.3d at 639.  A conditions of confinement claim is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Id*. at 643-44.  In order to succeed on a claim alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in "serious deficiencies" in providing for his "basic human needs." *Shepherd v. Dallas Cnty*, 591

F.3d 445, 454 (5th Cir. 2009). A punitive purpose may be inferred where the conditions are not reasonably related to a legitimate governmental interest. *Hamilton*, 74 F.3d at 105.

An episodic act or omission claim requires courts to employ the standard of deliberate indifference. This involves the following elements of proof: (1) an objective component, under which the detainee must prove his exposure to a harm or injury that violates contemporaneous standards of decency, and (2) a subjective component, under which the detainee must prove that the defendants' conduct evidences a deliberate indifference to that exposure. *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993). In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To be "sufficiently serious," the deprivation must deny a plaintiff of "the minimal measure of life's necessities." *Palmer*, 193 F.3d at 352. Under the subjective component, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837.

Plaintiff's allegations reveal that he is attempting to assert an episodic act or omission claim. Assuming Plaintiff's version of events is true, he describes a short period of annoyance and discomfort, not the deprivation of "the minimal measure of life's necessities." *See Palmer*, 193 F.3d at 352. Federal courts have repeatedly held that the deprivation of bedding for a limited period of time is not per se unconstitutional. *See Hill v. Smith*, 2020 WL 2226316, at *2 (E.D. La. April 1, 2020) (dismissing as frivolous a pretrial detainee's condition-of-confinement

claims based on allegations that he was detained in a cell without a bed or mat for eighteen days); *Laue v. Gusman*, 2014 WL 3733002, at *9 (E.D. La. July 25, 2014); *Grissom v. Davis*, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (holding that seven days without a mattress, sheets or a blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); *O'Leary v. Iowa State Men's Reformatory,* 79 F.3d 82, 84 (8th Cir.1996) (holding that sleeping without a mattress or blanket for four days on a concrete slab in a cell located ten feet from an exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities).

Plaintiff's allegations that he was deprived of running water in his cell for four days also does not rise to the level of a constitutional violation. Plaintiff does not allege that he was completely deprived of water. For example, he does not allege that officials failed to provide him fluids during meals. Additionally, Defendants point out that in one of his grievances Plaintiff stated that an officer turned his water on allowing Plaintiff a cup of water to take his medications. *See* [58] at 5.

Plaintiff alleges that the lack of running water in his cell resulted in a dirty cell. According to Plaintiff, he was without running water for only four days, and the length of time spent in offensive conditions should be taken into account because a "filthy, overcrowded cell . . . might be tolerable for a few days and intolerable for weeks or months."). *See Alexander v. Tippah Cnty*, 351 F.3d 626, 631 (5th Cir. 2003). Plaintiff has not suffered a violation of his due process rights cognizable under § 1983. *See Williams v. Delo,* 49 F .3d 442, 445 (8th Cir.1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional); *Seltzer–Bey v. Delo,* 66 F.3d 961, 964 (8th Cir.1995) (placement in strip

13

cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety). Accordingly, Plaintiff claims concerning the conditions of his confinement should be dismissed.

*Recreation*

Plaintiff alleges that he was denied an hour of recreation most days during his eleven-month incarceration at the jail. Neither the Supreme Court not the Fifth Circuit court of Appeals has held that pretrial detainees has a per se constitutional right to out-of-cell exercise or recreation. *See Callicut v. Panola County Jail*, 200 F.3d 816, 1999 WL 1095663 at *3 (5th Cir. 1999); *Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir. 1986); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979). "There is no requirement that inmates at a county jail be permitted outdoor recreation—only that 'in matters of physical health [] that the jailer must not be deliberately indifferent to the serious needs of his prisoners.'" *Busby v. Thompson*, 2008 WL 2942133, at *2 (N.D. Miss. July 28, 2008) (quoting *Jones*, 594 F.2d at 1013).

Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his health and safety. Plaintiff admits that he was allowed out of his cell for showers and that he was allowed out of his cell for recreation some days. Plaintiff does not allege that he was unable to move around or exercise in his cell, and he has not shown that he suffered a serious injury or was placed at substantial risk of serious injury. *See Laue*, 2014 WL 3733002, at *10. During the *Spears* hearing, the following exchange occurred:

> Court: So are you claiming any damage as a result of [the lack of recreation]?
>
> Plaintiff: No, sir. Not—I didn't claim any damages.

14

*See* [64-3] at 20.  Accordingly, Plaintiff's claim concerning the lack of out-of-cell recreation should be dismissed.

*Law Library*

Plaintiff alleges that the law library at the jail did not have sufficient materials and that, as a result, he did know the proper format for the filings in his criminal case.  Plaintiff's allegations implicate his right to access courts.  The Supreme Court has held that prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977).  Before an inmate may prevail on his claim, however, he must demonstrate that he suffered "actual prejudice," *i.e*. that the denial of access "hinder his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Plaintiff must show a real detriment, such as the loss of a motion or the loss of a right to commence, prosecute, or appeal in a court. *See Oaks v. Wainwright*, 430 F.2d 241, 242 (5th Cir. 2009); *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991) (holding that a civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice).

Plaintiff has not shown that he suffered any actual prejudice as he failed to identify any particular detriment he suffered as a result of the allegedly deficient law library.  Accordingly, Plaintiff's claim base on the denial of access to court should be dismissed. *See Patterson v. Harris County Jail*, 358 Fed. App'x 491, 492 (5th Cir. 2009) (holding that plaintiff's failure to allege actual injury was "fatal to her denial of access to courts claim").

### RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that:

1. Defendants' Motion for Summary Judgment [64] be GRANTED in part and DENIED in part.

2. Plaintiff's claims against Forrest County, Mississippi, and Justin Graham be DISMISSED with prejudice.

3. This action continue as to Plaintiff's excessive force claim against William Burdette.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject, or modify in whole or in part the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This the 30th day of December, 2021.

s/ Michael T. Parker
United States Magistrate Judge