IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**GEORGIO RODRIQUEZ SCOTT**                                                                                       **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO. 2:19-cv-123-TBM-MTP**

**FORREST COUNTY, MISSISSIPPI**                                                          **DEFENDANT**

**REPORT AND RECOMMENDATION**
**WITH LEGAL ANALYSIS AND FINDINGS**

THIS MATTER came before the Court for an evidentiary hearing on August 3, 2022, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).[1]  Plaintiff Georgio Rodriquez Scott appeared *pro se* via video, and Honorable William Allen and Lance Martin appeared on behalf of Defendant Forrest County, Mississippi.  Having heard the arguments of the parties and considered all of the evidence, the undersigned finds that Plaintiff failed to prove by a preponderance of the evidence the claim asserted against Defendant Forrest County, Mississippi, pursuant to the standards required by law.  Accordingly, the undersigned recommends that this matter be dismissed with prejudice.

**BACKGROUND**

On August 26, 2019, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983.  Plaintiff's claims arose from his pretrial detention at the Forrest County Jail.[2]  In his complaint and as clarified by his testimony at the *Spears*

---

[1] On January 8, 2020, the United States District Judge referred this matter to the undersigned United States Magistrate Judge for all further proceedings, including evidentiary hearings pursuant to 28 U.S.C. § 636 and Rule 72. *See* Order [20] (referring this matter to the Magistrate Judge to, *inter alia*, conduct hearings and submit to the District Judge "proposed findings of fact and recommendations for the disposition of this case.").

[2] Plaintiff was eventually convicted of a federal crime and is currently incarcerated at a Federal Bureau of Prisons facility in Pine Knot, Kentucky.

1

hearing,³ Plaintiff asserted excessive force claims against Officer William Burdette, verbal abuse claims against Officer Justin Graham, and claims against Forrest County concerning his meals, certain conditions of confinement, and access to the courts.

On July 1, 2021, Defendants filed a Motion for Summary Judgment [64], and on March 22, 2022, the Court entered an Opinion and Order [80] granting in part and denying in part the Motion for Summary Judgment [64]. Following the Court's Opinion and Order [80], two claims remained: Plaintiff's excessive force claim against Officer Burdette and a deprivation-of-water claim against Forrest County.

In its Opinion and Order [80], the Court granted Officer Burdette leave to file a second motion for summary judgment out of time. On April 13, 2022, Burdette filed his Second Motion for Summary Judgment [83], arguing that Plaintiff failed to exhaust his administrative remedies for his excessive force claim. On June 29, 2022, the Court granted Burdette's Second Motion for Summary Judgment [83] and dismissed Plaintiff's excessive force claim. *See* Opinion and Order [87]. Accordingly, Plaintiff's lone remaining claim is a deprivation-of-water claim against Forrest County. Plaintiff seeks compensatory damages for this claim.

## EVIDENCE PRESENTED AT THE HEARING

At the evidentiary hearing, Plaintiff testified that prior to June 8, 2019, he had multiple disputes with officers concerning the conditions at the Forrest County Jail, such as the food, the amount of time provided for showers, the need for cleaning supplies, and the intercom system.⁴

---

³ *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Flores v. Livingston*, 405 Fed. Appx. 931, 932 (5th Cir. 2010); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the complaint).

⁴ According to Plaintiff, he has a long history of incarceration but did not file grievances until his detention at the Forrest County Jail in 2019.

Plaintiff testified that on June 8, 2019, he was housed in an isolation cell and used his toilet to purposefully flood his cell in order to get the attention of the officers and have them address his concerns. Plaintiff submitted an incident report prepared by Officer Keith Williamson stating that Plaintiff flooded his cell on June 8, 2019. *See* Plaintiff's Exhibit 1.

According to Plaintiff, an officer shut off the water to his cell after Plaintiff flooded it.[5] Plaintiff testified that, although he is not sure how long the water to his cell remained off, he believes it was off for four to seven days. In his Complaint [1] and at his *Spears* hearing, Plaintiff alleged that he was deprived of water for four days. Plaintiff testified that during this time he was unable to flush his toilet and had to eat in his cell with feces and urine in the toilet.[6] Plaintiff also testified that a nurse attempted to dispense his medication, but he refused it because he had no water with which to take them.

At the hearing, Plaintiff submitted a grievance dated June 9, 2019, in which he complained that his water had been shut off on June 8, 2019, and that as of 11:00 p.m. on June 9, 2019, it remained off. *See* Plaintiff's Exhibit 2. According to Plaintiff, after a four-to-seven-day period, Officer Madden permanently turned on the water to Plaintiff's cell.

In his Objection [72] to a prior Report and Recommendation [68], Plaintiff argued that his medical records would prove that he was escorted by ambulance because he was suffering from dehydration. *See* [72] at 4. At the hearing, Plaintiff submitted medical records. These

---

[5] Plaintiff testified that the name of the officer who shut off his water was "Warren." Officer Keith Williamson later testified that the officer who Plaintiff believes shut off the water is named Juan Ratliff. But, Williamson testified that he, not Ratliff, turned off the water.

[6] Plaintiff also called Marcus Madden, who was an officer at the jail during Plaintiff's detention, as a witness. When asked by Plaintiff if he had helped Plaintiff clean feces out of the toilet during the relevant time period, Madden testified that he did not recall that event. Madden testified that he never personally cleaned feces from any detainee's toilet but may have provided Plaintiff supplies, such as gloves and a plunger. According to Madden, he provided many detainees supplies to address toilet problems on numerous occasions.

records, however, demonstrate that Plaintiff was taken to the hospital via ambulance on June 6, 2019—two days *before* the water to his cell was turned off. *See* Plaintiff's Exhibit 3. An ambulance was dispatched for Plaintiff due to abdominal pain. He was provided intravenous fluids and taken to the hospital.

When asked about the timing of this medical treatment, Plaintiff testified that it shows he was dehydrated even before the water was shut off. Plaintiff, however, testified that his cell had a sink with a water fountain and that when his water was not shut off, he had access to drinking water.

As previously mentioned, Plaintiff testified that he refused medications from a nurse because he had no water. Defendant, however, submitted a medication sheet indicating that Plaintiff had been provided his medications throughout the relevant time period. *See* Defendant's Exhibit 4. When asked about this document, Plaintiff testified that the nurse had been untruthful on the medication sheet. He also stated that the mediation sheet does not show that he actually took the medication. Plaintiff testified that he did not always take his medications even when he had access to water because medications can have side effects.

Defendant also submitted a second grievance which Plaintiff had filed on June 9, 2019. *See* Defendant's Exhibit 1. In this grievance, Plaintiff complained about his water being turned off the day before,[7] but he also stated that he had been allowed a cup of water to take his medications. *Id*. When asked about this grievance, Plaintiff testified that on a single occasion his water was temporarily restored so he could get a cup of water.

---

[7] Plaintiff submitted a third grievance on June 9, 2019, but in it, Plaintiff complained about his food and did not mention his water. *See* Defendant's Exhibit 2. Plaintiff did not file another grievance concerning a lack of water in his cell.

Defendant Forrest County called Dustin Gibson, who was a correctional officer at the time of Plaintiff's detention,[8] as its first witness. According to Gibson, Plaintiff was held in an isolation cell because he was aggressive and violent toward officers. Gibson testified that on June 8, 2019, he was passing out food trays when Plaintiff said that Gibson provided him the wrong tray. Gibson testified that when he attempted to replace Plaintiff's food tray, Plaintiff tried to stab him with a pen and threatened him and the other officers. Defendant submitted an incident report prepared by Gibson concerning Plaintiff's attempt to stab Gibson. *See* Defendant's Exhibit 5.

Gibson testified that when he returned to work the morning after Plaintiff's attack, he learned that Plaintiff had flooded his cell and that his water had been cut off. Gibson testified that jail policy required officers to cut the water off to any cell that was flooded in order to prevent further flooding. Gibson also testified that jail policy required officers to temporarily restore the water to these cells every three to four hours to allow the detainees to use water. He testified that he wanted the detainees to flush their toilets because of the smell and that pursuant to jail policy, detainees in isolation were provided cleaning supplies so they could clean their own cells. He also testified that water was provided when any inmate asked for it, and that detainees were provided milk with their breakfast and had their water restored around lunch and dinner. According to Gibson, water was permanently restored to these cells within one to two days, and he never witnessed the water remain off for more than two days.

---

[8] According to Gibson, he is no longer employed by Forrest County and is now employed with the Jones County Sheriff's Department.

Concerning Plaintiff's cell, Gibson testified that on two occasions on June 9, 2019, he witnessed officers temporarily restore the water to Plaintiff's cell. According to Gibson, the officers were William Burdette and Jamie Hopkins.[9]

Defendant called another correctional officer Keith Williamson as a witness.[10] According to Williamson, in 2019, he worked the 6:00 p.m. to 6:00 a.m. shift at the jail, and when he arrived at work on the evening of June 8, 2019, he learned that Plaintiff had threatened officers. Williamson testified that Plaintiff flooded his cell after he was informed that he could not leave his cell to make a phone call as punishment for threatening the officers. Defendant submitted Williamson's incident report concerning the flooded cell. *See* Defendant's Exhibit 6.[11] The report states: "Scott flooded his cell when told he would not get a phone call. Georgio Scott was threatening the lives of correction officers on C shift. That was the reason D shift had taken away [his] phone call." *Id*.

Williamson testified that he cut the water off to Plaintiff's cell after the flooding event. Officers had the ability to cut off the water to individual cells without affecting the water to the other cells. According to Williamson, jail policy required officers to cut the water off when an inmate was flooding a cell. He also testified that jail policy required officers to temporarily restore the water to these cells every two to three hours. He testified that nurses would provide detainees in these cells water when they distributed medications. According to Williamson, the water was usually permanently restored to these cells within twenty-four hours, and he was

---

[9] In rebuttal, Plaintiff stated that if these officers temporarily restored his water, they did not tell him and he was unaware of it.

[10] According to Williamson, he was a correctional officer at the Forrest County Jail in 2019, but is no longer employed by Forrest County.

[11] As previously mentioned, Plaintiff also submitted this incident report. *See* Plaintiff's Exhibit 1.

aware of no instance when water had not been restored before three days. Williamson stated that officers wanted to restore the water to these cells to prevent the odors that resulted when the water was off. He also testified that detainees were provided cleaning supplies. Williamson testified that he followed policy and temporarily restored Plaintiff's water ever two or three hours.

Defendant's final witness was Billy McGee, the former sheriff of Forrest County. McGee testified that he was the sheriff and final policymaker for the jail in 2019, when Plaintiff was detained there. McGee testified that he did not know Plaintiff and did not recall ever meeting him. He testified that he had no knowledge of the incidents involving Plaintiff until Plaintiff filed this action.

McGee testified that jail policy required officers to shut off the water to a cell being flooded to prevent flooding into other areas and to prevent a safety hazard. According to McGee, officers were not allowed to shut off water as a punishment.

McGee testified that typically the water would be permanently restored within twenty-four to forty-eight hours. McGee, however, explained that jail policy did not require that water be restored within twenty-four to forty-eight hours. McGee testified that jail policy did require officers to temporarily restore the water to these cells every three to four hours and to provide detainees water when they asked for it. When asked whether or not it would be a violation of jail policy if Plaintiff's water was shut off and he only received one cup of water for the next few days, McGee testified that it would be a violation of policy.

## LAW, ANALYSIS, AND FINDINGS

A pretrial detainee's constitutional right to adequate conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."

*Hare v. City of Corinth, Miss,.* 74 F.3d 633, 639 (5th Cir. 1996). "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepard v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644-45).

A conditions-of-confinement claim attacks "general conditions, practices, rules, or restrictions of pretrial confinement," such as overcrowding and the use of disciplinary segregation. *Hare*, 74 F.3d at 644. For an episodic-act-or-omission claim, "the complained of harm is a particular act or omission of one or more officials, and an actor usually is interposed between the detainee and the municipality." *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). Here, Plaintiff has asserted an episodic-act-or-omission claim, as his allegations focus on individual officers' failure to regularly provide him access to water for a period of four to seven days.

"To establish municipal liability in an episodic-act case, a plaintiff must show (1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Id*. at 634. To demonstrate deliberate indifference under the first prong, a plaintiff must show an official knew of an excessive risk of harm and disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Knowledge, in this context, requires that an official is both aware of facts from which an inference of harm could be drawn and actually draws that inference. *Id*. at 839-40. Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

8

Under the second prong, Plaintiff must show that a policy or custom was the "moving force" for the constitutional violation. *See Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008). The policy or custom can take the form of written policy statements, ordinances, or regulation; widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; a failure to train, provided that the failure is closely related to the ultimate injury and not just attributable to a particular officer's shortcomings; or a decision to adopt a course of action to handle a particular situation, if made by an authorized decisionmaker. *Garza*, 922 F.3d at 637.

Concerning the first prong, the undersigned finds that the more reliable evidence supports a finding that the correctional officers at the Forrest County Jail did not act with deliberate indifference. Plaintiff testified that he was held in a cell with no running water for a period of four to seven days and, during that period, was provided a single cup of water.

The evidence demonstrates that an officer was forced to shut off the water to Plaintiff's cell because Plaintiff's purposefully flooded his cell. *See* Plaintiff's Exhibit 1. Plaintiff admitted that he flooded his cell. Former officers Gibson and Williamson and former sheriff McGee all testified that jail policy required officers to shut the water off to any cell that was flooding. They also testified that jail policy required officers to temporarily restore the water to these cells every few hours.

The initial act of shutting the water off to Plaintiff's cell because he was flooding it did not create an excessive risk of harm. Additionally, evidence shows that Plaintiff was periodically provided access to water during the period as issue. Williamson testified that he temporarily restored Plaintiff's water while he was on duty, and Gibson testified that he witnessed two other officers restore Plaintiff's water during another shift. Gibson also testified

that detainees were provided milk with their breakfast and had their water restored around lunch and dinner.

Plaintiff—who filed dozens of grievances during his detention at the jail—only filed grievances concerning his water on June 9, 2019, the day after his water was shut off. And, Plaintiff admitted that he received a cup of water on that day. Thus, the documentary evidence shows that on the one day Plaintiff complained in writing about a lack of water, he admitted he was provided a cup of water.

Plaintiff testified that he could not take his medications due to a lack of water. Nurse's notes, however, indicate that Plaintiff received his medications throughout the time he claimed to be without water. *See* Defendant's Exhibit 4. Prior to the hearing, Plaintiff claimed that his medical records would show that he had suffered from dehydration. Plaintiff, however, presented no records showing that he received any medical treatment concerning dehydration after his water was shut off on June 8, 2019. Instead, the medical records show that Plaintiff received treatment, including intravenous fluids, for abdominal pain on June 6, 2019—two days before his water was shut off. *See* Plaintiff's Exhibit 3.

The undersigned finds that Plaintiff failed to prove that officers at the jail acted with deliberate indifference by depriving Plaintiff of water for a period of time which rises to the level of a constitutional violation. Additionally, to the extent that Plaintiff claims he was unable to flush his toilet for four to seven days due to a lack of running water, Plaintiff has not suffered a violation of his due process rights cognizable under § 1983. *See Alexander v. Tippah Cnty*, 351 F.3d 626, 631 (5th Cir. 2003) (a "filthy, overcrowded cell . . . might be tolerable for a few days and intolerable for weeks or months."); *Williams v. Delo,* 49 F .3d 442, 445 (8th Cir.1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for

four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional); *Seltzer–Bey v. Delo,* 66 F.3d 961, 964 (8th Cir.1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety).

Moreover, even if Plaintiff's testimony were true and jail officers acted with deliberate indifference by depriving Plaintiff of water, Plaintiff has failed to present evidence by which the officers' actions might reasonably be attributed to Forrest County. Forrest County is the sole defendant remaining in this action, and Section 1983 does not allow a county to be held vicariously liable based on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). As previously discussed, for Plaintiff to establish liability against Forrest County, he must show that the constitutional violation committed by officers "resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 at F.3d at 634. The policy or custom can take the form of a written policy, widespread practice, a failure to train, or a decisionmakers' adoption of a course of action. *Garza*, 922 F.3d at 637.

Two former officers and the former sheriff testified that jail policy required officers to shut the water off to any cell that was flooding and required officers to temporarily restore the water to these cells every few hours. If any officer refused to temporarily restore the water to Plaintiff's cell, Plaintiff did not attribute this action to any particular policy. In fact, the evidence demonstrates that such a refusal would be a violation of jail policy.

Plaintiff also failed to present evidence of a practice or custom of depriving detainees of water. Plaintiff only presented evidence concerning his alleged deprivation of water over a

period of days in June of 2019. He presented no evidence of similar maltreatment of any other detainees at the jail.

Plaintiff presented no evidence showing that officers were not trained or that an authorized decisionmaker adopted the course of action he alleges took place. No evidence shows that Sheriff McGee was aware of Plaintiff's presence at the jail, much less that he instructed officers to deprive Plaintiff of water. Accordingly, Plaintiff has failed to prove his claim against Forrest County. *See Garza*, 922 F.3d at 637-38.

Additionally, Plaintiff's claim for compensatory damages is barred by the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, *et seq*. In this action, Plaintiff only seeks compensatory damages, and he did not prove by a preponderance of the evidence that he suffered a physical injury. Plaintiff presented no evidence that he was injured as a result of his water being shut off on June 8, 2019. The only evidence Plaintiff presented concerning an injury were medical records from June 6, 2019—two days before the relevant time period. Thus, Plaintiff's claim should be denied. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries nonrecoverable, absent physical injury.").

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the preceding factual findings and legal analysis be adopted by the Court and that this action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 8th day of August, 2022.

s/ Michael T. Parker<br>
United States Magistrate Judge